IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MATTHEW S. TWIGG,                    )
                                     )
        Plaintiff,                   )
            v.                       )
                                     )      1:10cv122 (JCC)
TRIPLE CANOPY, INC.,                 )
                                     )
                                     )
        Defendant.                   )


**M E M O R A N D U M   O P I N I O N**

        This matter is before the Court on a Motion to Dismiss

filed on April 2, 2010 by Triple Canopy, Inc. ("Triple Canopy"

or "Defendant") pursuant to Federal Rule of Civil Procedure

12(b)(6).  [Dkt. 10.]  For the reasons stated below, the

Defendant's Motion to Dismiss is granted as to Counts I, III-IV,

VI-VII.

## I.    Background

        The relevant factual allegations in the Complaint are

as follows.  Twigg is a citizen of South Carolina.  (Compl.

¶ 1.)  Triple Canopy is a private security company with its

principal place of business in Herndon, Virginia, that provides

armed security services for U.S. government officials and

private citizens in dangerous countries around the world.

(Compl. ¶ 2.) Jurisdiction over the Complaint is proper under 28 U.S.C. § 1332(a)(1), as there is a diversity of citizenship and the amount in controversy is in excess of $75,000.

In April 2009, Triple Canopy was awarded a contract with the Department of State ("DOS") to provide security for U.S. diplomats serving in Baghdad. (Compl. ¶ 7.) The contract, referred to in the Complaint as "Task Order 12," came under the auspices of DOS's private security contracting program, the Worldwide Personal Protective Services II Program ("WPPS II"). (Compl. ¶ 7.) When DOS decided not to renew the contract of the previous security provider, it directed Defendant to hire Plaintiff, an employee of the previous contractor, as a Deputy Program Manager. (Compl. ¶ 7.)

Accordingly, on April 7, 2009, Triple Canopy offered Plaintiff a position on Task Order 12 in Baghdad, which he accepted ten days later. (Compl. ¶¶ 8-9.) Plaintiff alleges that before he accepted the contract a WPPS II Program Manager told Plaintiff that he "would be employed by Defendant for the full five (5) years of the WPPS II contract." (Compl. ¶ 8.) Triple Canopy's offer of employment to Twigg was memorialized in an offer letter which he signed, acknowledging that his "employment [would] be 'at will,'" and that "Triple Canopy [could] terminate [his] employment at any time and for any

reason whatsoever, with or without cause or advance notice."
(Compl. Ex. A at 2.)

Approximately seven and a half months later, on or
about December 3, 2009, Twigg was fired from Triple Canopy.
(Compl. ¶ 12.)  On December 3, 2009, DOS sent an email to
Defendant requesting an explanation regarding Plaintiff's
termination.  (Compl. Ex. F.)  That same day, Defendant met with
DOS representatives and officially informed them of the
termination.  (Compl. Ex. C at 1.)  In response to a request
from DOS for further information, Defendant sent a letter on
December 4, 2009 to the DOS Division Director overseeing the
contract explaining that, through a human resources
investigation, Defendant had determined that Plaintiff: (a)
"showed poor judgment, favoritism and personal bias in the
context of an investigation involving unauthorized alcohol
consumption" by giving "guidance to certain Task Order 12
personnel that assisted them in evading attempts to identify the
personnel [involved] in violations of the alcohol policy while
at the same time permitting other Task Order 12 personnel to be
identified and then terminated"; (b) "ignored direction by the
company's Chief Operating Officer to secure permission . . . to
serve a limited amount of alcohol at a company all-hands
meeting"; (c) "ignor[ed] the company's established practice for
timely reporting of incidents to company management" and instead

3

"reported them only to the DOS"; (d) "unilaterally decided to fly an injured employee home in coach class rather than business class, and then led personnel to believe that the decision was made by corporate headquarters" resulting in lower moral; and (e) failed to "address[] concerns with regards to disparate treatment and racial discrimination on Task Order 12" and, "took or permitted actions to reverse [certain] measures" that Triple Canopy had implemented to improve opportunities for minorities. (Compl. ¶ 17; Ex. C at 2-3.) The letter stated that, in Defendant's judgment, Plaintiff's misconduct "demonstrated [a] pattern of poor leadership and poor judgment and preferential treatment." (Compl. Ex. C at 2.) Plaintiff alleges that these statements are false and that "DOS investigated and then dismissed Defendant's baseless accusations against Twigg contained in the Defendant's December 4, 2009 letter." (Compl. ¶¶ 13-15, 19.)

On February 12, 2010, Matthew S. Twigg ("Twigg" or "Plaintiff") filed a verified complaint ("Complaint") alleging seven separate counts against Defendant, including: wrongful discharge (Count I); tortious interference with prospective contract (Count II); defamation *per se* (Count III); defamation *per quod* (Count IV); retaliation under 42 U.S.C. § 1981 (Count V); retaliation under the False Claims Act ("FCA"), 31 U.S.C. § 3729-3733 (Count VI); and, intentional infliction of emotional

4

distress (Count VII).[1]  [Dkt. 1.]  Plaintiff filed an Opposition

to the instant motion on April 23, 2010 in which he voluntarily

withdrew Counts II and V [Dkt. 16] and filed a separate Notice

of Voluntary Withdrawal of Counts II and V on May 4, 2010.

[Dkt. 19.]  Defendant replied on April 30, 2010.  [Dkt. 18.]

This Court issued an Order on May 6, 2010 dismissing Count II

(tortious interference) and Count V (retaliation under 42 U.S.C.

§ 1981) of the Complaint against the Defendant without

prejudice.  [Dkt. 21.]  In his Complaint, Twigg alleges that

Triple Canopy's asserted reasons for firing him are pretextual,

and that he was actually fired because Triple Canopy "resented"

having been directed to hire him by DOS.  (Compl. ¶ 16.)  Twigg

also alleges that he was fired "because . . . [he] cooperated

with the DOS in its investigation of [Triple Canopy's] false

claims, that is, its unlawful billing and invoicing practices in

connection with [Task Order] 12."  (Compl. ¶ 16.)  There are no

allegations that a *qui tam* action has been filed or that

Defendant was aware of such an action.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal

sufficiency of a complaint.  *See Randall v. United States*, 30

F.3d 518, 522 (4th Cir. 1994) (citation omitted).  In deciding a

---

[1] The Complaint attaches six exhibits, Exhibits A-F.  In considering motions to dismiss under Rule 12(b)(6), the Court may properly consider exhibits attached to the complaint.  *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1465 (4th Cir. 1991).

Rule 12(b)(6) motion to dismiss, the Court is mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Thus, the Court takes "the material allegations of the complaint" as admitted and liberally construes the Complaint in favor of Plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citation omitted). In addition to the Complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). Courts will also decline to consider "unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 2009 WL 5126224, *3 (4th Cir. 2009) (citing *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 615 n. 26 (4th Cir. 2009)); *see also Ashcroft v. Iqbal*, 129 S.Ct 1937, 1951-52 (2009). In *Iqbal* the Supreme Court expanded upon *Twombly* by articulating a two-pronged analytical approach

to be followed in any Rule 12(b)(6) test. *Id.* First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. *Id.* at 1951. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. *Id.* (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1950-51. Satisfying this "context-specific" test does not require "detailed factual allegations." *Nemet Chevrolet, Ltd.*, 2009 WL 5126224 at *4 (citing *Iqbal* at 1949-50 (quotations omitted)). The complaint must, however, plead sufficient facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." *Id.*

### III. Analysis

Defendant has moved to dismiss the Complaint in its entirety; however, Plaintiff has voluntarily withdrawn Count II and Count V. [Dkts. 16, 19.] Those claims have been dismissed without prejudice and are no longer before the Court. [*See* Dkts. 18, 19, 21.]

A.    Counts I and VI: Anti-Retaliation Claims under
      Virginia's Wrongful Discharge law and the False
      Claims Act

Plaintiff asserts two anti-retaliation claims against Defendant: Count I for Wrongful Discharge under Virginia common law and Count VI under 31 U.S.C. § 3730(h) of the FCA. These claims are premised on the allegation that Triple Canopy terminated Twigg in response to his "cooperat[ion] with the DOS in its investigation of Defendant's false claims, that is, its unlawful billing and invoicing practices in connection with [Task Order 12.]" (Compl. ¶ 16.) Defendant moves to dismiss Count I and Count VI for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

1.    *Count I: Wrongful Discharge under Virginia Law*

Virginia has long recognized the rule of at-will employment, allowing parties to enter into an employment agreement under which either party may terminate the agreement for any reason or no reason at all. *See Stonega Coal & Coke Co. v. Louisville & Nashville R.R.*, 106 Va. 223, 226 (Va. 1906). Virginia also recognizes an exception to at-will employment for termination in violation of public policy. *Bowman v. State of Keysville*, 229 Va. 534, 540 (Va. 1985). There are three situations where such an exception may apply: (a) when an employee is fired for having exercised a statutorily-protected right; (b) when an employee is fired in violation of a statutory

public policy that directly applies to or protects him (*i.e.* he is a "protected class"); and (c) when an employee plaintiff is fired for refusing to engage in criminal conduct. *Rowan v. Tractor Supply Co.*, 263 Va. 209, 213 (Va. 2002). The public policy on which a plaintiff must rely to qualify for this exception must be expressed in an existing Virginia statute. *Lawrence Chrysler Plymouth Corp. v. Brooks*, 251 Va. 94, 98–99 (Va. 1996) ("[Plaintiff] does not have a cause of action for wrongful discharge because he is unable to identify any Virginia statute establishing a public policy that [defendant] violated . . . ."); *See Oakley v. May Dep't Stores, Co.*, 17 F. Supp. 2d 533, 536 (E.D. Va. 1998).

Plaintiff here asserts the type of "generalized, common-law 'whistleblower' retaliatory discharge claim" that the Virginia Supreme Court has specifically "refused to recognize" as an "exception to Virginia's employment-at-will doctrine." *Dray v. New Market Poultry Products, Inc*. 258 Va. 187, 191 (Va. 1999) (citing *Lawrence Chrysler Plymouth Corp.,* 251 Va. at 98–99.) As such, Plaintiff's wrongful discharge claim must qualify under the second or third exceptions of *Rowan* to succeed.

To meet the second *Rowan* exception, Plaintiff must show that a statute imposed upon him an affirmative duty which he was terminated for refusing to violate. *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 451 (E.D. Va. 2002); *Anderson*

*v. ITT Industries Corp.*, 92 F. Supp. 2d 516, 521 (E.D. Va. 2000) (citing *Dray,* 258 Va. at 191). To meet the third exception of *Rowan*, Plaintiff must show that he could have been prosecuted under Virginia criminal law had he engaged in the conduct demanded by his employer. *See Anderson v. ITT Indus. Corp.*, 92 F. Supp. 2d 516, 523 n.18 (E.D. Va. 2000) ("[P]laintiff will have to prove . . . that all of the elements of [the] statute were met"). The statutes upon which Plaintiff relies are Va. Code § 18.2-172, prohibiting forgery, and Va. Code § 18.2-178, prohibiting obtaining money under false pretenses. Plaintiff argues that "both [Virginia] statutes plainly impose a duty on Twigg not to commit the crimes of forgery or obtaining money under false pretenses," (*Rowan's* second prong) and that Defendant fired him "refusing to engage in statutorily prohibited conduct" (*Rowan's* third prong). (Compl. ¶¶ 23-24.)

In moving for dismissal, Defendant asserts two arguments that hinge on the same premise. Defendant argues that because Plaintiff was in Iraq at the time of the relevant conduct, neither could a Virginia criminal statute impose a duty on Plaintiff nor could Plaintiff violate such a statute while there. The Virginia Supreme Court has held that "[e]very crime to be punished in Virginia must be committed in Virginia." *Moreno v. Baskerville*, 249 Va. 16, 18, (Va. 1995) (quoting *Farewell v. Commonwealth*, 167 Va. 475, 479 (Va. 1937)). Twigg

is neither a citizen of Virginia nor does the Complaint describe any conduct that occurred in Virginia, and so, Defendant argues, Twigg could have had no duty to abide by Virginia law nor could Defendant have fired him for refusing to break an inapplicable law. (*See* Mem. in Supp. Mot. to Dismiss ("Mem.") at 10.) For Counts I and VI to survive under *Rowan,* Plaintiff must show that these Virginia statutes applied to his conduct in Iraq.

In his Opposition, Plaintiff argues that Virginia criminal law "imposed a duty" on him in Iraq and that Defendant asked him to violate these Virginia statutes in Iraq. (Pl.'s Opp. at 11.) Plaintiff offers two reasons why the criminal statutes were applicable in Iraq. First, he argues that the "immediate result" of a violation of the crimes would have been felt in Virginia and so the criminal conduct was punishable there. (Pl.'s Opp. at 11.) Second, Plaintiff argues that the venue provision for "continuing offenses" allows Virginia to prosecute individuals for offenses committed outside the Commonwealth. (Pl.'s Opp. at 12-14.)

Plaintiff's first argument is that, because Defendant's corporate headquarters were in Virginia, any money successfully defrauded from the government through the falsification of bills and forging of invoices would have been paid to Defendant at corporate headquarters in Virginia and that the forged documents sent to DOS by Plaintiff would pass through

11

Virginia. A similar "chain of distribution" theory was rejected by the Virginia Supreme Court in a drug distribution case where criminal activities completed in Arizona were considered too attenuated to allow for prosecution of an individual under Virginia law. *Moreno*, 249 Va. at 18-19. As "every crime to be punished in Virginia must be committed in Virginia," Plaintiff must show some criminal conduct occurred here. *Farewell*, 167 Va. at 479. The Complaint here contains no factual allegations that forged documents passed through Virginia or that Defendant maintained bank accounts in Virginia where fraudulently obtained money could be deposited. The "immediate result" of the crime is purely hypothetical, and there are no factual allegations supporting Plaintiff's argument.

Plaintiff also argues that the Virginia criminal statues apply to Plaintiff in Iraq because forgery and false pretenses to obtain money are "continuing offenses." (Pl.'s Opp. at 12.) Plaintiff cites to two venue provisions related to the underlying offenses to support this proposition. Plaintiff first cites Va. Code § 19.2-245.1, stating:

> If any person commits forgery, that forgery may be
> prosecuted in any county or city (i) where the writing
> was forged, or where the same was used or passed, or
> attempted to be used or passed, or deposited or placed
> with another person, firm, association, or corporation
> either for collection or credit for the account of any
> person, firm, association, or corporation or (ii)
> where the writing is found in the possession of the
> defendant.

12

Va. Code § 19.2-245.1.  Plaintiff also cites Va. Code § 19.2-245, ostensibly for "obtaining property by false pretenses." Va. Code § 19.2-245.  The statute, however, is entitled "Offenses committed without and made punishable within Commonwealth; embezzlement or larceny committed within Commonwealth; where prosecuted" and states in part:

> Prosecution for offenses committed wholly or in part
> without and made punishable within this Commonwealth
> may be in any county or city in which the offender is
> found or to which he is sent by any judge or court;
> and if any person shall commit larceny or embezzlement
> beyond the jurisdiction of this Commonwealth and bring
> the stolen property into the same he shall be liable
> to prosecution and punishment for larceny or
> embezzlement in any county or city into which he shall
> have taken the property as if the same had been wholly
> committed therein . . .

Va. Code § 19.2-245.

    The Virginia Supreme Court has held that such a venue provision simply allows for the prosecution of an "an offense committed in this State, although the initial act in the chain of events forming the offense was committed outside the State." *Lovelace v. Commonwealth*, 205 Va. 541, 545 (Va. 1964).  Aside from the jurisdictional statement at its outset, the Complaint does not contain sufficient allegations regarding conduct that was part of an alleged "forgery" or "obtaining money by false pretenses" crime, let alone any conduct that could be connected to Virginia.  (*See* Compl. ¶ 2.)  Plaintiff has not cited to any

13

cases where either the Virginia forgery statute or the Virginia false pretenses statute was applied extraterritorially, either through reliance on these venue provisions or otherwise. Plaintiff has also failed to allege some criminal conduct causing an "immediate impact" in Virginia. Absent some allegation of conduct in the Commonwealth, the venue statutes cited by Plaintiff do not confer jurisdiction in Virginia for the actions Plaintiff committed in Iraq.

As Plaintiff has failed to plead facts sufficient to show that any of the *Rowan* exceptions to Virginia's "at-will" employment law apply, Count I of Plaintiff's Complaint shall be dismissed.

### 2. *Count VI: Retaliation under the FCA*

Under 31 U.S.C. § 3730(h) of the FCA, employer retaliation against "whistle-blowers" is prohibited.[2] To properly assert a FCA retaliation claim, a plaintiff must offer facts sufficient to show: (1) that the plaintiff engaged in protected activity under the FCA; (2) *that the employer knew* of the protected activity; and (3) that the employer retaliated

---

[2] 31 U.S.C. § 3730(h) provides in relevant part:
    Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under [the FCA], including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.
31 U.S.C. § 3730(h).

against the plaintiff as a result of those acts. *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 866 (4th Cir. 1999) (emphasis added).

The only question for the Court here is the sufficiency of Plaintiff's claims under the Rule 8 pleading standard as articulated in *Twombly* and *Iqbal*. At a minimum, Plaintiff has failed provided sufficient factual allegations regarding the second and third prongs of *Eberhardt* -- that the employer knew of the protected activity and that the employer retaliated against the plaintiff as a result of those acts.

The Complaint alleges that "Twigg cooperated with the DOS in its investigation of Defendant's false claims." (Compl. ¶ 16.) However, there are no further factual allegations regarding Defendant's knowledge of Twigg's "protected activity" or that Twigg's termination was a "result of those acts." The Complaint contains only the conclusory allegation that Defendant "retaliated against Twigg . . . and/or unlawfully terminated Twigg because . . . Twigg cooperated with the DOS. . . ." (Compl. ¶ 16.) Without more, such allegations are not sufficient to properly state a cause of action for retaliation under 31 U.S.C. § 3730. Count VI of the Complaint shall be dismissed.

B.  Counts III-IV, and VII:  Immunity Based on Government Cooperation

Plaintiff's remaining causes of action are premised on Defendant's December 4, 2009 letter to the DOS. (*See* Compl. ¶¶ 31-44, 53-57; Ex. C.) Plaintiff alleges that the contents of the letter were defamatory (both *per* se and *pro quod)* and that drafting and sending the letter amounted to intentional infliction of emotional distress ("IIED"). (Compl. ¶¶ 31-44, 53-57.) In the Fourth Circuit, absolute immunity from state tort lawsuits for government contractors is meant to apply "only insofar as necessary to shield statements and information, whether truthful or not, given by a government contractor and its employees *in response to queries* by government investigators engaged in an official investigation." *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1449 (4th Cir. 1996) (emphasis in original) (finding the government contractor immune in a lawsuit alleging IIED and defamation based on the contractor's statements made to government investigators about the plaintiff). In reaching its decision, the *Mangold* court found that "to expose private government contractors who are responding to and cooperating with such investigations to the risk of state tort claims would chill the investigative effort to the same extent that exposing cooperating government employees would." *Id.* The value of the investigations "outweighs the interest of affording individuals redress against

persons for participating in the investigations for wrongful actions. *Id.* at 1447.

More recently, in *Scharpenberg v. Carrington*, --- Fed. Supp. 2d. ---, 2010 WL 604868 (E.D. Va. 2010), a district court found that a government's letter to a contractor requesting information about the plaintiff's allegedly fraudulent conduct conferred immunity from tort claims based on the content of the contractor's response. *See id.* Similarly, in *Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 175 (2d Cir. 2006), the Second Circuit held that a private contractor was immune from state tort liability when it conveyed information that certain individuals posed terrorist threats to the government, even without a government initiated investigation.

The conduct of the Defendant here certainly falls into the type of conduct that is protected from state tort liability for defamation and IIED. Counts III-IV and VII all rely on the December 4, 2009 letter from the Defendant to DOS. The contents of that letter tend to show that it was sent "in response to queries by government investigators engaged in an official investigation." *See Mangold,* 77 F.3d at 1449; (Compl. Ex. C). For example, the letter states that "the Department of State requested that we provide correspondence that documented the reasons for the termination." (Compl. Ex. C.) In addition, Exhibit F of the Complaint (the DOS email to Defendant) also

demonstrates that DOS was investigating the reasons behind Plaintiff's termination. (Compl. Ex. F.) Finally, the Complaint itself states that "DOS investigated and then dismissed Defendant's baseless accusations against Twigg contained in the Defendant's December 4, 2009 letter." (Compl. ¶ 19.) Plaintiff cannot now argue that there was not a "government investigation" when such an allegation is made in his own verified complaint. The December 4, 2010 letter upon which Plaintiff relies was part of a government investigation making the Defendant immune from state tort liability for its contents.

      C. <u>Count VII: Intentional Infliction of Emotional Distress Claim.</u>

Although this Court has already found Defendant immune from suit under Count VII, Plaintiff's IIED claim also fails under Rule 12(b)(6). To establish a claim for IIED, a Plaintiff must sufficiently allege that: (1) the wrongdoer's conduct was intentionally reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe. *Supervalu, Inc. v. Johnson,* 276 Va. 356, 369-370 (2008); *Almy v. Grisham,* 273 Va. 68, 77 (2007); *Russo v. White,* 241 Va. 23, 26-27 (1991). The Fourth Circuit found in *Hatfill v. New York Times Co.,* 416

F.3d 320, 337 (4th Cir. 2005), *cert. denied,* 126 S.Ct. 1619

(2006), that under Federal Rule of Civil Procedure 8 a plaintiff

is not required to plead IIED with the particularity usually

required under Virginia law, and that under Rule 8, the

plaintiff must only provide "fair notice of what [his] claim is

and the grounds upon which it rests." Nevertheless, even under

the *Hatfill* notice pleading standard, Plaintiff has failed to

establish a Virginia IIED claim.

The Plaintiff relies on Defendant's December 4, 2009

letter as the basis for the IIED claim. The letter, however,

was not sent to the Plaintiff but was instead sent to the DOS in

response to a specific request from the DOS. "[O]n those

occasions when [Virginia] courts have found the plaintiff's

pleadings of this tort sufficient to reach a jury, the plaintiff

is inevitably the direct target of the challenged conduct."

*Contreras v. Thor Norfolk Hotel, L.L.C.*, 292 F. Supp. 2d 798,

804 (E.D. Va. 2003). Here, the Complaint contains no

allegations that Triple Canopy's conduct targeted the Plaintiff

or that Triple Canopy intended that Plaintiff see the letter or

its contents, or that DOS made the letter public or accessible

to Plaintiff. Accordingly, Plaintiff has not adequately pled an

IIED claim under Rule 12(b)(6).

## IV. Conclusion

For the reasons stated above, this Court will grant Defendant's Motion to Dismiss Count I, III-IV, and VI-VII.  An appropriate Order will issue.


|                      | _____/s/_____            |
|----------------------|--------------------------------------|
| June 2, 2010         | James C. Cacheris                    |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE   |